### MORGAN et al. v. WHITE et al. (No. 1776.)

Court of Civil Appeals of Texas. Beaumont.
Aug. 14, 1929.

Rehearing Denied Oct. 2, 1929.

Jack M. Moore, of Cleburne, and O. J. Todd and C. S. Pipkin, both of Beaumont, for appellants.

A. W. Marshall, of Anahuac, and A. D. Lipscomb, of Beaumont, for appellees.

WALKER, J. Oscar Kimball died in 1910, owning one-fourth of Houston & Texas Central Railroad Company section No. 46 in Chambers county, which was incumbered by deed of trust in the sum of $1,320 in favor of R. M. White for money advanced by White as part of the purchase price of the land. Kimball left a will appointing White independent executor without bond, with power and authority to wind up his estate, and as directed to sell enough of his estate to pay all indebtedness. White's power to sell was absolute for this purpose. Kimball also by his will devised all his estate to White in trust for the use and benefit of his two daughters. This provision of the will was as follows:

"I hereby give, will and bequeath unto my trusted friend Robert Monroe White of Stowell, Texas, in trust for the use and benefit of my beloved daughters viz: Adaline Kimball and Lucille Kimball, both of Beaumont, Texas, in equal shares, parts and portions the entire property of every kind, nature, and character of which I may die seized and possessed both real, personal and mixed and any and all choses in action and right of property accrued and that may hereafter accrue to me or my estate, with full power and authority hereby vested in the said Robert Monroe White to collect, manage, control, sell and convey as he may see fit, and the best interest of my estate, and the same as I might or could do if living, any, all or any part of my said estate first paying my just debts and funeral expenses, and the remainder of my estate, after the payment of taxes and expenses of the management of my estate he is hereby directed that as my said daughter or either of them shall become married or arrive at the age of (21) *twenty* years, he shall divide my estate into two equal parts and portions and turn over to them or the one first marrying or arriving at the age of 21 years that such one half of said property, and hold the other one half until the other one of my said daughters shall have arrived at the age of twenty one years or shall have married when her share shall be delivered to her, on each of such occasions to make regular conveyances to each of them and taking the proper receipts therefor, my said executor is however hereby vested with full power to manage and control my said estate as he thinks best, to either hold it or sell all or any part of my estate and re-invest the proceeds thereof, but out of the rents, revenues and profits arising from my estate, if any, he is requested to pay to both or either of my said daughters such sums of money from time to time as he may think proper and advisable for the best interest of my estate and either their best interests may demand in his judgment."

One of the daughters attained her majority in 1917 and the other in 1919. In 1919, after the youngest girl had attained the age of 21, White, by warranty deed in which his wife joined, conveyed the above-described tract of land to D. W. Syphrett on a consideration of part cash and the balance in vendor's lien notes. The deed was in the usual form, with no reference to the will of Kimball, but Syphrett accepted it from White, believing he was the owner in fee simple of the land conveyed. At that time he did not know anything about the Kimball will, and White made no statement to him to the effect that he was deeding the land as executor or trustee under the will. On this issue Syphrett testified:

"The consideration recited in the deed is the true amount. Mr. Monroe White claimed to own this individually, he and his wife. He gave me a warranty deed. That was my understanding. I asked for an abstract deed, and he told me that there was no use, that he could give me a good title. I never heard anything about him selling it as executor and trustee of the estate. He was selling it as his property. That is the way I understood it."

When the vendor's lien notes matured, Syphrett paid them off, and White, at a time

before any controversy arose between him and the devisees under the will, executed proper releases against the notes, and by these releases referred to the will as the source of power under which the deed was executed. From the death of Kimball until the land was sold in 1919, for all years except 1917 and 1918, White assessed the land for taxes in the name of the Kimball estate. For the two years named it was assessed as if White was the owner. White charged against the estate all taxes paid by him upon this land. He testified that he acted under the will in all things done by him in connection with the estate, including the sale of this land, and that he never claimed to own the land in his own right. To quote from his testimony:

"At the time I executed that deed I did not claim any right or title in that land except what I had under the will of Oscar Kimball and by reason of being a creditor of Oscar Kimball, nor my wife did not."

When the land was sold, and at all times since its sale, the debts exceeded the value of the estate. The proceeds of the sale of the land were appropriated by White to his own use and benefit. The land sold for several hundred dollars more than the unpaid balance on the deed of trust. The deed from White to Syphrett was prepared by a man unlearned in the law. On the 26th day of January, 1927, the devisees under the will, joined by their husbands, instituted this suit in trespass to try title against White and Syphrett to recover this land. The defendants answered by pleas of not guilty, and Syphrett pleaded over against White on his warranty. On trial to the court without a jury, judgment was in favor of the defendants. No conclusions of fact and law were requested or filed. The plaintiffs have duly prosecuted their appeal, and assign the following propositions:

First. They say that it appears as a matter of law from the deed by White to Syphrett and from the facts attending its execution that it was not the intention of White to execute any power derived from the Kimball will, but, under the undisputed facts, they say White repudiated the power granted him by the will and executed the deed to Syphrett as the owner in fee simple of the land conveyed. If appellants have correctly construed the facts, judgment should have been in their favor. The law of this proposition was stated in our Supreme Court in Hill v. Conrad, 91 Tex. 341, 43 S. W. 789, as follows:

"The rule which we deduce from the American authorities is, that a trustee or donee of a power may execute the power conferred upon him by an instrument which does not refer to the power itself, but in such case to make the execution of the power valid it must appear from the instrument or from the attending circumstances that the donee or trustee did in fact act under and by virtue of the power conferred upon him to dispose of the property in question and that it was his intention to dispose of the property in accordance with the power so conferred. If from the circumstances or the instrument executed it be doubtful as to whether it was the intention to execute the power possessed by the grantor, then it will not be held that by such act or conveyance that power was in fact executed."

On authority of this case, the intention of the donee of the power relied on in executing the deed becomes an issue of fact, to be determined as any other fact issue. If judgment is entered sustaining the deed, it must be affirmed if it has support in the evidence. That White rendered the land for taxes for all the years except 1917 and 1918 in the name of the estate; that all of the taxes were charged against the estate; that White testified he did not intend to repudiate the power given him under the will; that the deed was written by one unskilled in the law; and that White, at a time before this controversy arose, executed releases against the vendor's lien notes as the representative of the Kimball estate—raised the issue that he, in executing the deed, acted under the authority given him by the will. The law is that a power may be executed by an instrument which does not refer to the power itself, provided it is made to appear from the attending circumstances that the maker did in fact act under and by virtue of the power. Hill v. Conrad, supra. That issue was raised by the evidence, and, in the absence of a conclusion of fact by the trial court to the contrary, must be resolved in support of the judgment.

Second. Appellants insist that the trust imposed in White by the terms of the will expired before the deed was executed. This proposition is based upon the admitted fact that the devisees under the will attained the age of 21 before the deed was executed. Appellants have misconstrued the will. White was named independent executor with power to sell enough of the estate to pay the debts. There was no time limitation on the execution of this power. At the time the land was sold, the debts against the estate exceeded the value of the land, in fact, exceeded the value of the estate. Also, as we construe the will, in naming White trustee, he was given power to sell the assets of the estate to pay the debts. It follows that his authority under the will had not expired when the deed was executed.

The judgment of the trial court having support in the evidence, it is our order that it be in all things affirmed.

Affirmed.