David BERCHELMANN et al., Appellants,

v.

The WESTERN COMPANY et al., Appellees.

No. 5533.

Court of Civil Appeals of Texas.

El Paso.

Dec. 12, 1962.

Rehearing Denied Jan. 9, 1963.

Morrison, Dittmar, Dahlgren & Kaine, Michael J. Kaine, San Antonio, for appellants.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., Milton L. Bankston, Turpin, Kerr, Smith & Dyer, Thornton Hardie, Jr., Midland, L. L. James, Tyler, Bill Snow, Big Lake, John F. Wagenhauser, Dallas, for appellees.

FRASER, Justice.

This particular case was severed from another cause, the severance being due to pleas of privilege. This is an appeal from a decision of the trial court which withdrew the case from the jury and rendered judgment in favor of the appellees for their respective debts, interest and attorneys' fees. This judgment was rendered against all of the appellants, jointly and severally, and in addition included an order establishing and foreclosing materialman's liens in favor of the Youngstown Sheet and Tube Company. The relationship between the parties arose by virtue of an agreement between a partnership known as Texita, comprised of Gordan W. Johnston and I. A. McNabb, and the appellants. This agreement involved the drilling for and production of oil and gas from a certain tract of land known as the Shannon "A" lease, in Crockett County. The operating and drilling was to be done by Texita which, along with the appellants, were holders of fractional parts of all the working interest under an oil and gas lease on the lands described as Shannon "A" in Crockett County, Texas. According to the record before us Texita was to drill and operate, and each of the appellants was to be billed for

a proportionate share of the expense, which he was to remit to Texita. Texita was known as the "operator" and appellants as "non-operators". The appellees here were various creditors or assignees of creditors who had supplied material and services for the operations on the property in question at the request of Texita. These appellees sought and obtained a judgment in the lower court holding appellants liable on the theory that Texita and appellants were jointly and severally liable for these debts because a mining partnership, or partnership agreement of some sort, existed between Texita and appellants, and that Texita had acted as agent and representative of appellants.

The trial court, after withdrawing the matter from the jury, rendered judgment in favor of the appellees for their debts, interest and attorneys' fees and—as stated above—granted Youngstown a further judgment establishing and foreclosing its alleged materialman's lien. This judgment also involved some other parties and collateral matters, but we are concerned here with only that part of the judgment rendered against the appellants who have perfected their appeal to this court.

We believe that appellants' Points 1, 2, 3, 4, 5, 6, 7 and 9 must be sustained. Although there are fourteen points of error in all, we believe the other points of error need not be discussed, as they will be disposed of automatically by this decision.

We will dispose of Point 5 first. This point deals with the matter of a materialman's lien. It is clear from the record that Youngstown, in whose favor the materialman's lien was granted, had not taken the necessary steps required by law to establish the lien under the conditions here present.

According to the record the agreement between Texita and appellants provided for drilling and operation on this Shannon "A" tract of land. It is clear, from the evidence—oral and documentary—and from the affidavits and exhibits, that Texita was to be the operator, and the appellants were known, and acted, as "non-operators", mere-ly paying their proportionate shares of the expenses. The only other significant provision was that Texita agreed not to obligate itself for more than $2500 for any one item without the written approval of the non-operators. The record reveals that Texita regularly billed the appellants, and appellants remitted their allotted shares of the incurred expenses. The appellees, who had supplied various items of material and services, do not seem to have ever held or billed any of the appellants for the credit extended to Texita prior to this lawsuit. It is also clear that Texita was a going concern and had established its credit with many of appellees before the transaction with reference to the Shannon "A" leases materialized. Other than the matter of the $2500 expenditure qualification, the record is clear that Texita was to be the operator, in sole control of the drilling and production on the land here involved. We do not find any evidence that Texita was the agent or representative of these appellants (holders of fractional parts of the working interests of the oil and gas leases) nor do we find that the creditors themselves (appellees here) extended any credit or depended on payment from the appellants. The two partners of the Texita company themselves stated that they were the operators and in control of this matter, and handled the business transactions, submitting reports, only, to appellants with invoices for the amounts they owed. Appellees successfully urged in the trial court that this relationship constituted a partnership and/or a mining partnership. We do not find that the elements necessary to create this relationship and the resultant liability thereunder are here present. Without going into a long discussion of the requirements necessary to establish a mining partnership relation, we deem it sufficient to say that the very operating agreements themselves, wherein appellants were designated as the "non-operators" and Texita as the "operator" do not contain the basic elements of sharing of liability, control, risk and profits, along with the elements of agency, necessary to consti-

tute a partnership or mining partnership. It is our opinion that the relationship here concerned was, as alleged by appellants, a working agreement between Texita as operator and appellants as non-operators. The latter were to contribute their proportionate shares of the expenses incurred and controlled by Texita which, by definite agreement as represented by the written instruments and other documentary evidence, was in control of both the drilling and production. We see no valid legal reason to hold the appellants liable for debts incurred by the operator. The operator used its own credit, made its own transactions, and finally wound up being adjudicated bankrupt. It is apparent that the negotiations between the parties resulted in agreements whereby Texita was to drill and operate, and appellants were, like a certain type of stockholder, liable only to Texita and entitled to profits only if such could be accomplished by Texita in its drilling and operations. It is our conclusion that Texita, as operator, was given exclusive charge, management and control of all operations of every kind to be conducted on the Shannon "A" lease for the development, production, treating and handling of oil and gas; that Texita was to secure and furnish the necessary material, labor and services and pay for them; that Texita actually did operate the lease pursuant to the operating agreement, procuring labor and materials, and that such were charged to accounts maintained solely in the name of "Texita Oil Company". There is no evidence that any of appellees ever sent bills, invoices or notices of any sort to the non-operators.

In any event, we believe this case is controlled by the decision of the Supreme Court of Texas, Youngstown Sheet and Tube Company v. Penn et al., 363 S.W.2d 230. That opinion affirms the decision of the trial court and court of civil appeals. The facts in that case were substantially the same as the facts here, and involved a similar relationship between Texita and owners of fractional parts of the working interest of oil and gas leases in Atascosa County. In that case the trial court and the court of civil appeals denied the claims of the creditors against the holders of non-operating interests. The Third Court of Civil Appeals sitting at Austin, in a careful and well-reasoned opinion, set forth a great part of the documentary evidence as well as the affidavits involved in that particular lawsuit, together with much of the testimony. Because the evidence in that case is so similar and so substantially like the evidence here as to be almost identical, we do not reproduce same, but merely refer to the decision of the Court of Civil Appeals, entitled as shown above and cited as Youngstown Sheet and Tube Company v. Penn et al., 355 S.W.2d 239. The court there relied heavily on the case of U. S. Truck Lines v. Texaco, Inc., Tex.Civ.App., 337 S.W.2d 497 (writ refused). We believe that case (and cases cited therein) also is controlling with respect to the matter before us, and the Eastland Court of Civil Appeals (which rendered that decision) was very specific and plain in denying the existence of a partnership between the parties. In the Supreme Court case cited above, there was another and important point—to-wit, the sufficiency of the affidavits filed along with the motion for a summary judgment. We do not have that problem in the case before us, but the Supreme Court, in disposing of the matter, affirmed the Austin Court of Civil Appeals finding that no partnership or agency of any type existed, and that the interest-holders there were not jointly liable, nor did there exist any mutual agency between them and Texita. The Court of Civil Appeals in its decision (355 S.W.2d 239), after reviewing the evidence, reached the same conclusion that we have reached here—namely, that Texita possessed and exercised exclusive control of the development and operations of the lease, along with the duty to make the necessary purchases and contractual arrangements for service. The court also pointed out that the accounting procedures (which were the same as those in the case before us) were similar to those in the case relied on by

that court—to-wit, U. S. Truck Lines v. Texaco, Inc. (supra).

We hold the matter before us to be a question of law, and that the appellees failed to prove the necessary elements of partnership and agency so as to make the appellants jointly and severally liable with Texita for the debts and obligations incurred by Texita. Youngstown Sheet and Tube Co. v. Penn et al., Tex.Civ.App., 355 S.W.2d 239; U. S. Truck Lines v. Texaco, Inc. (and cases cited therein), 337 S.W.2d 497 (Eastland Civ.App., wr. ref.); Youngstown Sheet and Tube Co. v. Penn et al., 363 S.W.2d 230, Supreme Court of Texas.

For these reasons appellants' points as enumerated above are all sustained, and the decision of the trial court is reversed and rendered to the effect that the appellees take nothing from the appellants.